445 A.2d 1306

**Shirley H. WEINGRAD, Administratrix of the Estate of Richard H. Weingrad, Deceased**

v.

**Donald LIPPY and Philadelphia Electric Company, Defendants & Montgomeryville Airport, Inc., Additional Defendants.**

**Appeal of Keith S. ERBSTEIN, Esquire.**

Superior Court of Pennsylvania.

Argued Sept. 9, 1981.

Filed May 21, 1982.

James E. Beasley, Philadelphia, for appellant.

Keith Erbstein, Philadelphia, for Weingrad, appellee.

Adrian J. Gordon, Philadelphia, for Lippy, appellee.

Patrick W. Kittredge, Philadelphia, for Philadelphia, appellee.

Martin Bashoff, Philadelphia, for Montgomeryville, appellee.

Dianne L. Anderson, Philadelphia, for participating party.

Before HESTER, McEWEN and SHERTZ, JJ.

PER CURIAM:

Keith S. Erbstein, Esquire, counsel for the plaintiff in the lower court, has appealed from an Order dated January 27, 1981, entered by the trial court, citing Mr. Erbstein for criminal contempt and fining him $35.00, for his alleged failure to comply with a previous Order of Court.

A jury trial commenced on January 19, 1981 before Judge Bullock. Plaintiff rested her case on Friday, January 23, 1981, following which a conference was held in chambers. During the conference, defense counsel announced that he also rested. The following conversation then ensued:

THE COURT: The case is over. The evidence is all in on the question of liability.

MR. KITTREDGE [defense counsel]: Yes.

THE COURT: I want your points by 9 o'clock in the morning in room 604. Does anyone have their points already done?

MR. KITTREDGE: No, sir. Do you wish me to make sure that it is filed, or will you?

THE COURT: You make sure it is filed.

Following this exchange in chambers, Judge Bullock and counsel then discussed the order of closing speeches to the jury. Counsel for the plaintiff contended that, although the defendant had rested, the defendant "did move for at least the admission of that one exhibit into evidence." Therefore, counsel for the plaintiff requested that he be permitted to deliver a rebuttal speech to the jury.

The Court listened to both sides of the argument, but decided not to rule on the issue until Monday morning. The Court stated "If I rule that the defendant has offered evidence, and if the defendant wishes to offer more evidence, I will permit that." The defendant indicated that, if the Court concluded that it had already presented evidence, it might present testimony on Monday, January 26, 1981.

In order to submit points for charge as requested by the Court, appellant worked on Saturday, January 24, 1981. He requested that his secretary come into the office at 8 o'clock a. m. on Monday, January 26, 1981 so that the points could be ready at 9 o'clock. Appellant arrived at Judge Bullock's chambers at 9 o'clock. At this time, his points were still in the process of being completed and duplicated. He had instructed his secretary to have the points delivered when completed. Shortly after 9 o'clock a. m., the defendant hand-delivered its points for charge. Appellant called his secretary at approximately 9:10 a. m. and instructed her to have the points delivered immediately. At approximately 9:23 a. m., the plaintiff's points arrived, and were given to Judge Bullock's secretary. When Court convened on Monday morning, the defendant changed its mind and decided to present evidence. As a result, the charge of the Court was not delivered until Tuesday, January 27, 1981.

On January 26, 1981, Judge Bullock stated the following in chambers:

THE COURT: All right, gentlemen, you will remember the last thing I said on Friday was that 9 o'clock meant 9 o'clock for the points. Mr. Gordon called me before 9 o'clock and said he was not submitting any points. The electric company points were just about on the button. But the plaintiff's points did not arrive until 9:23.

Under the circumstances, Mr. Erbstein, I am fining you $35, and I will make that in the form of a written order later today. I told you on Friday afternoon, and explained to you why. As a result I didn't have a chance to go through your points completely, as I did go through the electric company's points. Some people don't seem to listen.

Appellant contends that there is no legal basis for the contempt citation. We agree; and, therefore, reverse.

The power of a Court to impose a summary criminal contempt citation is presently derived from the Act of July 9, 1976, P.L. 586 No. 142, 42 Pa.C.S.A. § 4131, which provides in relevant part:

"The power of the several courts of this Commonwealth to issue attachments and inflict summary punishments for contempts of court shall be restricted to the following cases, . . .

II. (2). Disobedience or neglect by officers, parties, jurors or witnesses of, or to the lawful process of the court; . . .

In *Commonwealth v. Garrison*, 478 Pa. 356, 386 A.2d 971 (1978), the Court enumerated the criteria necessary to support a finding of contempt under this section, as follows:

1. The order or decree must be definite, clear, specific and leave no doubt or uncertainty in the mind of the person to whom it was addressed of the conduct prohibited;
2. The contemnor must have had notice of the specific order or decree;
3. The act constituting the violation must have been volitional; and
4. The contemnor must have acted with wrongful intent.

Appellant argues that the first two criteria did not apply to the instant case, since Judge Bullock's "request" was not in the form of an "order or decree", and also because he did not receive any written notice of the specific order or decree. Following the discussion in chambers on Friday, January 23,

1981, Judge Bullock stated in open court: "Gentlemen, 9 o'clock means 9 o'clock for your points to be in chambers 604, so I can go over them." Therefore, it would appear that Judge Bullock attempted to be clear concerning his directive. However, based upon our decision in this matter, we need not address this issue.

On the basis of our full review of the record, we conclude that the act which constituted the violation was not volitional and that appellant did not act with wrongful intent. In *Commonwealth v. Haefner*, 470 Pa. 392, 368 A.2d 686, 688 (1977), the Court held: "The mere showing of noncompliance with a court order or misconduct ... is never sufficient, alone, to prove contempt." We agree with this reasoning, and find it dispositive of the instant case.[1] Obviously, appellant prepared his points for charge prior to 9 o'clock on January 26, 1980. It is undisputed that he requested that his secretary come to work early that morning in order to type them. We cannot agree that appellant willfully caused his points of charge to be delivered to the Court 23 minutes late.

Appellant also argues that, since the lower court did not in fact charge the jury until Tuesday, January 27, 1980, that the contempt citation was unwarranted. We find this argument spurious. In the interest of judicial economy and efficiency, Judge Bullock properly directed that points for charge be delivered to his office at a specific time. If there were evidence to support a finding that appellant failed to timely deliver the points for charge of his own volition, and with wrongful intent, we would not hesitate to affirm the contempt citation.

Order reversed.

SHERTZ, J., did not participate in the consideration or decision of this case.

1. See *Commonwealth v. Washington*, 466 Pa. 506, 353 A.2d 806 (1976); *Commonwealth v. Washington*, 470 Pa. 199, 368 A.2d 263 (1977); *Commonwealth v. Giordano*, 254 Pa.Super. 543, 386 A.2d 83 (1978).