487 A.2d 11

**Andree P. FENSTAMAKER**

v.

**Richard L. FENSTAMAKER, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 15, 1983.

Filed Jan. 4, 1985.

412

Lester L. Greevy, Jr., Williamsport, for appellant.

Irwin M. Shur, Williamsport, for appellee.

Before: SPAETH, President Judge, and CIRILLO and JOHNSON, JJ.

JOHNSON, Judge:

These consolidated appeals arise from four orders entered by the trial court, each holding appellant in contempt.[1] The orders were issued during the course of a non-jury trial for divorce, equitable distribution, alimony and other relief.

The parties were married in August of 1959 and separated in August of 1976. Since sometime prior to their separation, appellant, an attorney, has been employed as chief executive officer of Radiant Steel Products Company, owned principally by the two parties. Appellee filed the instant action pursuant to the Divorce Code, 23 P.S. § 101 et seq., on September 19, 1980. Trial commenced in January of 1982, with various hearings held thereafter, up to and following the issuance of the contempt orders and the subsequent appeals.

A substantial amount of assets is at issue, as is the ownership of the company. Numerous discovery requests

---

1. The first order was for criminal contempt, the remaining three for civil contempt.

have been filed by both parties and have been vigorously contested, especially by appellant. Due to difficulties arising from appellant's alleged interference with appellee's service of subpoenas on various witnesses and his refusal to comply with various discovery orders, he has been held in contempt of court on four separate occasions.

Appellant raises six issues on appeal. The first four concern whether the trial court abused its discretion or committed an error of law in finding him in contempt in each of the four situations. The fifth issue concerns adequate notice of the criminal contempt hearing. The sixth issue involves the trial court's failure to recuse itself pursuant to appellant's request on April 23, 1982.

We note initially that in considering an appeal from a contempt order, great reliance must be placed upon the discretion of the trial judge. *In re Grand Jury, April Term, 1977, Wayne County,* 251 Pa.Super. 43, 379 A.2d 323 (1977).

In issues one and five, appellant challenges the propriety of the April 23, 1982 order holding him in direct criminal contempt. The order resulted from the trial court's determination that appellant had attempted, on three occasions, to prevent or interfere with appellee's service of subpoenas on various witnesses and his interference leading to the failure of one witness to appear pursuant to having been served with a subpoena.

The first incident was an attempt to serve process on Mel Hines, an employee of appellant's company. When the process server appeared at the company's offices and asked appellant about Mr. Hines' whereabouts and how he could contact him, appellant told the server it was "none of your business" and that "that is your problem."

The second incident was an attempt to serve process on another employee, June Schreiber, at appellant's home. The process server was admitted to appellant's home by his daughter, who informed the server that Schreiber was in the shower. The process server told appellant's daughter

to notify Schreiber of his presence. Appellant then appeared and evicted the server from the home, telling him Schreiber did not reside there.

The third incident was a telephone conversation between appellant and a representative of appellee. The representative was attempting to contact Sherian Ross, another of appellant's employees, to inform her of when she was required to appear in court pursuant to a subpoena previously served on her. After calling the company and Ross' residence in a futile attempt to locate her, the representative called the company again and was put on the telephone with appellant. Appellant then told the representative not to call the company, as she was "browbeating" his employees, and that she was to speak with him exclusively.

The testimony regarding all three incidents occurred on April 20, 1982, the date on which Ross was ordered, but failed, to appear. Subsequent to the testimony, the court issued a Rule to Show Cause why Sherian Ross should not be held in contempt for her failure to appear at that hearing, as ordered by the subpoena. The hearing on the Rule was held April 23. At this hearing, following testimony from Ross, the transcript continues:

By Mr. Greevy [counsel for appellant]:

If it please the Court, we would like to call Mr. Fenstamaker, if that is appropriate in this proceeding?

By The Court:

Yes. You may step down.

I want to make it clear before he takes the stand. My concern at this point is not just with regards to Mrs. Ross, but with regards to his behavior, and I want to spell that out, so there is a clear understanding before he takes the stand.

By Mr. Greevy:

Yes, your Honor, he understands that. That is why he is taking the stand.

By The Court:

I want to spell that out. I received testimony earlier this week from [process servers] Harold McCallis and

Ernest Strossel and from Kimberly Everly. All of them have testified in various ways as to conduct on other occasions in which Mr. Fenstamaker has interferred [sic] with the orderly process of services of subpoenas upon witnesses. In that context it has added meaning, and I am concerned whether he should not be held in contempt of Court after the hearing concludes.

N.T. April 23, 1982 at 44A–45A.

Following appellant's testimony, the trial court made findings of fact[2] concerning appellant's interference with service of process, held him in direct criminal contempt pursuant to 42 Pa.C.S. § 4131(2), and imposed the fine of $1,000, payable within 30 days.

The statute involved, 42 Pa.C.S. § 4131[3] states:

§ 4131.  **Classification of penal contempts**

The power of the several courts of this Commonwealth to issue attachments and to inflict summary punishments for contempts of court shall be restricted to the following cases:

(1) The official misconduct of the officers of such courts respectively.

(2) Disobedience or neglect by officers, parties, jurors or witnesses of or to the lawful process of the court.

(3) The misbehavior of any person in the presence of the court, thereby obstructing the administration of justice.

■■■ As set forth in *Weingrad v. Lippy,* 300 Pa.Super. 76, 79, 445 A.2d 1306, 1308 (1982), four elements are necessary to support a finding of contempt under section 4131(2):

**2.** At the April 23 hearing, both Ross and appellant also testified as to the reason for her failure to appear on April 20. Appellant had told Ross on April 16th that the hearing, originally scheduled for April 19, was cancelled. However, the court found that appellant failed to tell her that he had already been informed that the hearing was rescheduled for April 20, in the afternoon. Ross was unavailable on April 20, as she had left town in reliance on appellant's information.

**3.** Renumbered as § 4132 and amended Dec. 20, 1982, P.L. 1409, No. 326, Art. II, § 201 eff. in 60 days.

1. The order or decree must be definite, clear, specific and leave no doubt or uncertainty in the mind of the person to whom it was addressed of the conduct prohibited.

2. The contemnor must have had notice of the specific order or decree;

3. The act constituting the violation must have been volitional; and

4. The contemnor must have acted with wrongful intent.

*See also Commonwealth v. Garrison,* 478 Pa. 356, 386 A.2d 971 (1978) (plurality opinion). Also, a conviction for criminal contempt clearly requires proof beyond a reasonable doubt. *In re Bernhart,* 501 Pa. 428, 461 A.2d 1232 (1983). Appellant argues that the trial court's classification of its order as *direct* criminal contempt was improper, and that if in fact criminal, the order was justified only on the basis of *indirect* criminal contempt. He further argues that *indirect* criminal contempt convictions require certain procedural safeguards not present in the instant proceeding.

■ A direct criminal contempt consists of misconduct of a person in the presence of the court, or disobedience to or neglect of the lawful process of the court, or misbehavior so near thereto as to interfere with the immediate business of the court. The essence thereof is that the misconduct constitutes a direct affront to the dignity and authority of the court so that punishment is required to preserve the efficacy of the judicial system and the administration of justice. *Commonwealth v. Marcone,* 487 Pa. 572, 410 A.2d 759 (1980).

■ There is support for the conclusion that influencing a witness to absent himself may be a contempt of court. *See Greason v. Cumberland Railway Company,* 54 Pa.Super. 595 (1913) (dictum); 1 Std.Pa.Practice 2d § 5:10; Goodrich-Amram 2d § 4019(c):6. However, our review of the findings of fact on which the trial court held appellant in

criminal contempt convinces us that the conviction was unwarranted in the instant case. No order or decree was directed *to appellant,* regarding either service of the subpoenas or the rescheduling of the April 19 hearing; therefore, the first two requirements as set forth in *Weingrad v. Lippy, supra* have not been met. Hence, appellant's conduct was, at best, indirect criminal contempt.

In *Commonwealth v. Fladger,* 250 Pa.Super. 36, 378 A.2d 440 (1977), appellant was convicted of criminal contempt for her failure to comply with a subpoena duces tecum requiring production of certain hospital records. Our court held the order invalid, as there was neither personal service of a court order nor personal knowledge sufficient to place her on notice of personal responsibility to comply, as the subpoena was not individually directed to appellant. The court also set forth the rule of law that personal service of a court order is ordinarily a prerequisite to a contempt adjudication for disobedience of a court order. An exception exists where the person has actual knowledge of the order, despite lack of personal service. However, this exception is qualified to situations where the person has a "reliably authoritative basis" for believing that he could be held responsible for a failure to comply. *See Neshaminy Plaza II v. Kelly,* 21 Pa.Commw. 469, 346 A.2d 884 (1975). In the instant case, appellant did not have such a "reliably authoritative basis" for believing he could be held in contempt for his actions.

Secondly, appellant's conduct, while uncooperative, does not rise to the level of a direct affront to the dignity or authority of the court, nor was the evidence sufficient to prove beyond a reasonable doubt that said conduct had the capacity to directly affect the proceeding then in progress.[4] We do not condone appellant's behavior, but cannot affirm his conviction for criminal contempt, based on the facts

---

4. No evidence was presented indicating that any of the witnesses could have been served but for appellant's interference. Also, having already been served with a subpoena, Ross' failure to appear on April 20 cannot be attributed exclusively to appellant's conduct in informing her that the hearing had been postponed.

before us, as the requirements of section 4131(2) have not been met. We therefore reverse the order of April 23, 1982.

◼ Appellant's second, third and fourth issues concern the validity of the orders holding appellant in contempt on May 26, 1982, June 14, 1982 and July 2, 1982. We disagree with appellee's allegation that appellant's failure to file exceptions to the contempt order constitutes waiver. A contempt order imposing sanctions is final and appealable when entered and no exceptions are required. *Joseph Horne Co. v. International Union of Operating Engineers, Local Union No. 95–95A*, 250 Pa.Super. 145, 378 A.2d 868 (1977). Commensurate with this holding, appellant now argues on appeal that the procedural requirements prerequisite to an adjudication of civil contempt were not followed. We do not find it necessary to reach the merits of appellant's argument regarding these orders, however, because we conclude that the challenges to them have been waived.

◼ Generally, questions neither raised nor properly preserved for review in contempt proceedings in the court below will not be considered by the reviewing court. 7A P.L.E. Contempt § 38. During the contempt hearings, appellant never objected that he was not being accorded necessary procedures. Appellant may not have remained silent before the court below and now be heard to complain that the trial court's procedures were improper. *See In re Martorano*, 464 Pa. 66, 346 A.2d 22 (1975) (due process challenge to contempt proceeding waived because not raised at contempt hearing). *See generally Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974).

Appellant argues additionally that the trial court erred in not recusing itself pursuant to appellant's request.

◼ In *Commonwealth v. Reid*, 494 Pa. 201, 431 A.2d 218 (1981), the court held that while appellant charged that the judge was "unfair" and "prejudiced," he did not levy any personal attack on the court nor was there an ongoing, bitter controversy between the two. The judge, therefore,

did not abuse his discretion in refusing to recuse himself. Our review of the record in the instant case indicates the same lack of an ongoing, bitter controversy. Furthermore, we find no evidence of unfairness or prejudice by the court. As no valid allegations of bias or prejudice appear, we hold the issue to be meritless. *See Municipal Publications, Inc. v. Snyder*, 322 Pa.Super. 464, 469 A.2d 1084 (1983).

■ We note finally appellant's allegations that the fines assessed were extraordinarily high. We agree with the reasoning of the trial court that "(w)hile the amount of the fine is large, given the defendant's wealth and his income, a very large fine is necessary in the judgment of the Court in order to coerce compliance." N.T., 7/8/82 at 11. Thus, based upon our review of the record, we find no abuse of discretion with respect to the orders and assessed fines of May 26, 1982 and June 15, 1982. Appellant's assets were sizeable and, accordingly, the fines not unreasonable. Appellant also alleges abuse of discretion by the court in its refusal to rule on appellant's Request to Purge Himself of Contempt. As appellant's Request does not appear of record because of its filing subsequent to the taking of these appeals, we are unable to rule on this issue.

The order of April 23, 1982 is reversed. The orders of May 26, 1982, June 14, 1982 and July 2, 1982 are affirmed.